1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4              v.                          10 Cr. 431 (LAK)

5   JAMES J. ROSEMOND,

6                   Defendant.

7   ------------------------------x

8                                         New York, New York
                                          November 20, 2017
9                                         2:00 p.m.

10

    Before:
11
                        HON. LEWIS A. KAPLAN,
12
                                          District Judge
13

14                        APPEARANCES

15  JOON H. KIM
         Acting United States Attorney for the
16       Southern District of New York
    BY:  SAMSON ENZER
17       DREW JOHNSON-SKINNER
         ELIZABETH HANFT
18       Assistant United States Attorneys

19  DAVID TOUGER
    JONATHAN EDELSTEIN
20       Attorneys for Defendant

21  ALSO PRESENT:

22  NYPD Detective Steven Smith
    Nicholas Pavlis, Paralegal (USAO)
23

24          (Charge conference; two p.m.)

25          THE COURT:  Good afternoon.

HBKAAROSF                    Charge Conference

1    Let's mark the draft charge court exhibit number in

2  order.  What is that, Andy?

3    COURTROOM DEPUTY:  "I".

4    THE COURT:  And the proposed verdict form court

5  Exhibit J.

6    Have you all had the verdict form?  So we'll start

7  with the charge.

8    Are there any objections from the beginning to page

9  six, line 18?

10    MS. HANFF:  None for the government, your Honor.

11    MR. EDELSTEIN:  Up to page six, line 18 to -- non for

12  the defendant.

13    THE COURT:  Page six, line 19 through page nine line

14  18.

15    MS. HANFF:  No, your Honor.

16    MR. EDELSTEIN:  Yes, your Honor.

17    THE COURT:  OK.

18    MR. EDELSTEIN:  From the lectern or from here, judge?

19    THE COURT:  Lectern, please.

20    MR. EDELSTEIN:  At page seven, line 23 after the

21  sentence that ends "before or after he or she joined", based on

22  the authorities cited in the letter brief we submitted

23  yesterday, we would request additional language stating that in

24  the case of the murder-for-hire conspiracy the latest time that

25  a person can join is the time of the victim's death.

1    THE COURT:  What does the government have to say to

2  that?

3    MS. HANFF:  Your Honor, it's our view that that

4  statement that counsel just made in fact overstates the law.

5  As we made clear in our letter, we are not relying on any

6  argument that the defendant here joined the conspiracy after

7  the murder by virtue of the payment.  That said, we think that

8  your Honor's proposed charge fairly encompasses what I think

9  defense counsel wants to state which is simply that in this

10  case the defendant must have joined the conspiracy that has as

11  its object the murder and must have done it with the same

12  unlawful purpose in that case.  And our view is that's well

13  encompassed within your Honor's instructions about having the

14  unlawful purpose of the conspiracy, joining the conspiracy with

15  the intent to accomplish the conspiracy's goal.

16    THE COURT:  Well, specifically, Mr. Edelstein, what

17  are you relying on?  Why does it matter in light of the fact

18  that the government's not going to argue the point?

19    MR. EDELSTEIN:  The reason why we submit it matters,

20  judge, is that it was something -- this was a theory that the

21  Court developed on its own without any prompting or argument

22  from the parties.  Which means that a juror or jurors might

23  develop that same theory on its own, that a juror might decide

24  that even if Mr. Rosemond was not a member of the conspiracy at

25  the time Lowell Fletcher was killed he became one when he paid

1  for it.  I would submit that if one person can think that up

2  spontaneously then so can a member of the jury.

3          THE COURT:  I'm sure that every member of the jury is

4  familiar with the Venussi case and has been on the bench for 23

5  years.

6          MR. EDELSTEIN:  I'm sure that there are no members of

7  the jury who have been on the bench for even 23 minutes.

8          THE COURT:  Well, there was a little irony intended.

9          MR. EDELSTEIN:  But, your Honor, I would submit that

10  one doesn't have to be a judge or familiar with the Venussi

11  case for that theory or something like it come up doing the

12  discussion.  Especially since I'm sure that even if the

13  government doesn't make a specific argument, the payment is

14  going to be mentioned in the summations of both parties and

15  there has been evidence of it.

16          THE COURT:  Well, you know the problem is that I doubt

17  that I agree with your statement that no one can join a

18  conspiracy to commit murder-for-hire after death.  I don't

19  actually believe to the extent I've looked at them in light of

20  the fact that the government disavowed reliance on any such

21  theory that your cases really support your argument.

22          MR. EDELSTEIN:  Well, I would submit certainly the

23  Davis case which finds that a, quote/unquote, post-murder

24  payment does not satisfy Frampton where there was no prior

25  agreement to exchange a murder for a thing of value.

1    THE COURT:  No prior agreement by anyone?  Are you

2    telling me that that's what the case says?

3    MR. EDELSTEIN:  Well, judge, we're not talking

4    about --

5    THE COURT:  Just answer may question please.

6    MR. EDELSTEIN:  No.  I'm not saying that is what the

7    case is.

8    THE COURT:  OK.  Well, that's the problem with the

9    argument.  Here, the theory that I articulated the other day

10   was the possibility that there was indeed an agreement between

11   and among two or more of Slim and D and Jason Williams that

12   involved a payment.  And that it was conceivable that your

13   client joined that conspiracy by making the payment with

14   knowledge that that's what it was for.

15   Now if you are telling me that your best case is Davis

16   and that Davis doesn't involve those facts, I don't see that

17   your request is supported by your cases and I seriously

18   question whether the language you want me to add is an accurate

19   statement of the law.

20   MR. EDELSTEIN:  Well, your Honor, I would submit just

21   briefly that my argument doesn't relate to whether anyone can

22   join the conspiracy by making such an agreement that's related

23   to when Mr. Rosemond who is the only person on trial might join

24   that conspiracy.

25   THE COURT:  So this is an argument unique to

1   Mr. Rosemond?  It's not a proposition of law that would apply

2   generally?  It's a proposition of law that you've made up

3   that's specific to Mr. Rosemond; is that it?

4            MR. EDELSTEIN:  No, judge.  What I am saying is or

5   what I am arguing is that this proposition of law applies to

6   everybody.  However, Mr. Rosemond is the only one on trial.

7            THE COURT:  Well --

8            MR. EDELSTEIN:  And Mr. Rosemond is the only one who

9   the jury will have to make a decision as to when he joined the

10  conspiracy.

11           THE COURT:  All right.  I have your point.  I'm not

12  going to give the language.  I do not view it as an accurate

13  statement of the law and I view it as also entirely immaterial

14  in view of the fact that nobody's going to argue it.

15           Next?  Anything else on that section?

16           MR. EDELSTEIN:  Yes.  Page nine, lines 8 to 12, Time

17  of Conspiracy.  We would go that the language be added there

18  that stating that the conspiracy must have been formed and

19  existed reasonably close or was substantially similar to time

20  of the date of the indictment which the Court actually included

21  elsewhere in the charge on page 33, but we would request that

22  that charge be included in page nine as well.

23           THE COURT:  What's the government's view?

24           MS. HANFF:  Your Honor --

25           THE COURT:  It's also not what I said at page 33 but

1    aside from that.

2           MS. HANFF:  The government doesn't have any specific

3    objection to that but it seems unnecessary in light of the fact

4    that what the language is here and the language your Honor used

5    later in the charge having to do with substantial similarity.

6           THE COURT:  Yes.  Well, I'll tell you what.  I'll use

7    the substantial similarity language here and I'll also put an

8    "S" on the end of the word "date" in line 12 which was intended

9    in the first place.  So I'll repeat the sentence that starts on

10   line 13 starting at line 11 on page 9.  And the line 13 that I

11   refer to is an page 33.

12           OK.  Anything else on that section, Mr. Edelstein?

13           MR. EDELSTEIN:  Not from the defense, judge?

14           THE COURT:  All right.  Page nine, line 15 through

15   page 12, line 16.

16           Government?

17           MS. HANFF:  No, your Honor.

18           THE COURT:  Mr. Edelstein?

19           MR. EDELSTEIN:  No, your Honor.

20           THE COURT:  Thank you.

21           Page 12, line 17 through page 14, line five.

22           Government?

23           MS. HANFF:  Yes, your Honor.  Page 13 where your Honor

24   discusses the third element "receipt for anything of value",

25   the government would request a statement that the law does not

1    require that there be an understanding as to any precise amount

2    of money or drugs.  We think that that goes without saying.

3    But in any event, there was some effort it appears by defense

4    counsel to argue somehow that any confusion about the amount of

5    money that was promised at various points may in some way

6    detract from the proof.  And the government has reviewed the

7    case of U.S. v. Babylonia which is 854 F.3d 163 and that case

8    we think makes it very clear that there need not be a precise

9    agreement as to the amount of money.  In fact that case is

10   related to the Davis case that defense counsel cited in their

11   letter.

12        THE COURT:  Do you have a problem with that,

13   Mr. Edelstein?

14        MR. EDELSTEIN:  Well, judge, we have no intention of

15   arguing that there has to be a precise agreement as to the

16   amount of money.  And in that case as the government says, it

17   goes without saying, I would submit it doesn't need to be said.

18        THE COURT:  All right.  Line 23 will be changed to

19   read:

20        "Anything of value includes, for example, any amount

21   of money drugs or other property".

22        Anything from the defense on that section?

23        MR. EDELSTEIN:  Yes.  In that same instruction, page

24   13, lines 20 to 22, I would again argue that there should be

25   language stating that the mutual agreement must be formed

1   before the time of the victim's death.

2              THE COURT:  Government?

3              MS. HANFF:  Your Honor, for the same reason we opposed

4   previously we oppose this proposed instruction.  In addition,

5   of course, the language is a mutual agreement understanding or

6   promise.  To me that implies, of course, that that

7   understanding agreement or promise would have had to be reached

8   before the completion of any offense.  So the government

9   submits that it's again unnecessary language and language that

10  would possibly confuse a juror.

11             THE COURT:  Yes.  I think it's adequately covered by

12  the instruction.

13             Page 14, line seven through page 17, line five.

14             Government?

15             MS. HANFF:  No, your Honor.

16             THE COURT:  Defense?

17             MR. EDELSTEIN:  Yes, your Honor.  On page 15 no

18  specific line but with regard to the language regarding the

19  defendant willfully and knowingly associated himself in some

20  way with the crime on the basis of the United States v.

21  Shulman, S-H-U-L-M-A-N 624 F.2d 384, 387, Second Circuit 1980,

22  I would submit that this language should state that the

23  voluntary association with the crime must take place before the

24  crime is completed on the basis of the statement in Shulman, "A

25  person cannot be found guilty of aiding and abetting a crime

1   that already has been completed."

2           THE COURT:  Well, it's your same point again.

3           MR. EDELSTEIN:  It is, your Honor.

4           THE COURT:  Overruled.

5           Anything else on that section from either side?

6           MS. HANFF:  No, your Honor.

7           THE COURT:  All right.  Page 17, line six.  Take that

8   through page 18 line 3.

9           Government?

10          MS. HANFF:  Not from the government.

11          MR. EDELSTEIN:  Nothing, your Honor.

12          THE COURT:  Thank you.  18 line, six through 22, line

13  15.

14          MS. HANFF:  Your Honor, the government has one request

15  it deals with, page 19, line seven and it's simply a

16  clarification point.  The government would request that on line

17  seven your Honor insert language that at any point during the

18  period from March 20, 2007, our concern is that perhaps the

19  language which is of course the language in the indictment but

20  indictment language is different suggests that the defendant

21  need have knowingly possessed or carried a firearm during that

22  entire period as opposed to at some point during that period?

23          THE COURT:  Mr. Edelstein.

24          MR. EDELSTEIN:  No objection.

25          THE COURT:  Essentially, what you want is that it

1    should read "that for all or part of period from"; is that

2    right?

3          MS. HANFF:  My suggestion, your Honor, was first that

4    at any point "during the period from at least on or about".

5          THE COURT:  "From any point during the period", OK.

6          Anything else on that section from either side?

7          MS. HANFF:  That section under where, your Honor?

8          THE COURT:  Page 22 line 15.

9          MS. HANFF:  Nothing else from the government.

10          MR. EDELSTEIN:  Nothing else, your Honor.

11          THE COURT:  Page 22, line 17 through page 25, line 17.

12          MS. HANFF:  Nothing from the government.

13          MR. EDELSTEIN:  Your Honor, on page 24, lines 12 to 13

14    the language stating "the conspiracy to commit murder-for-hire

15    of members of a rival music business", I'm aware that is what

16    the indictment says but I don't believe that the government

17    intends to argue that anyone other than Lowell Fletcher was the

18    object of that conspiracy.  And I would submit that it would be

19    clarifying to say "Lowell Fletcher" instead of "members of a

20    rival music management business" because the jury might

21    otherwise speculate that somebody else might be the object.

22          THE COURT:  Ms. Hanff?

23          MS. HANFF:  Your Honor, we believe that there's

24    evidence in the record that certain other members of a rival

25    group were targets at certain points.  Of course, as charged in

1    the indictment, it is our view that it's conspiracy to commit

2    murder-for-hire of a member of the rival rap music business

3    which resulted in the death of Lowell Fletcher, we would

4    certainly be fine with that but substituting the Lowell

5    Fletcher we don't think would be an accurate characterization

6    of the charge.

7              THE COURT:  I think that's right.

8              MR. EDELSTEIN:  We would accept that compromise.

9              THE COURT:  Which compromise?

10             MR. EDELSTEIN:  That Ms. Hanff suggests.

11             THE COURT:  In other words, that the conspiracy that

12   murder-for-hire of members of a rival music management business

13   resulted in the death of Lowell Fletcher?

14             MR. EDELSTEIN:  Yes, your Honor.

15             THE COURT:  That's your language, Ms. Hanff?

16             MS. HANFF:  That was a suggested compromise, your

17   Honor.

18             THE COURT:  OK.  I'll make that change.

19             OK.  Anything else up to page 26, line 10?

20             MS. HANFF:  No, your Honor.

21             MR. EDELSTEIN:  No, your Honor.

22             THE COURT:  Page 26, line 13 through page 31, line 15.

23             Government?

24             MS. HANFF:  On page 27 this is just likely a

25   typographical error on line two and I believe it should say

1   "Section 1111".

2           THE COURT:  You are absolutely correct.

3           Anything else on that section?

4           MS. HANFF:  No, your Honor.

5           MR. EDELSTEIN:  No, judge.

6           THE COURT:  OK.  Page 31, line 17 through page 32,

7   line 12.

8           MS. HANFF:  Nothing from the government.

9           MR. EDELSTEIN:  Nothing from the defense.

10          THE COURT:  Do you want a venue instruction?  Seems

11  like a waste of time.

12          MS. HANFF:  Your Honor, we'd like to keep it in just

13  for the record.

14          MR. EDELSTEIN:  We would waive it, your Honor.

15          MS. HANFF:  OK.  That's fine.

16          THE COURT:  It's out.

17          Page 33 line 10, that last piece on variance and

18  dates.

19          Anything on that section, Ms. Hanff?  I doubt it.

20          MS. HANFF:  No, your Honor.

21          THE COURT:  Mr. Edelstein?

22          MR. EDELSTEIN:  No, your Honor.

23          THE COURT:  OK.

24          The section on trial process is sort of longish so --

25  no, it's not.  Anything on the section headed "Trial Process"?

1     MS. HANFF:  On page 38, your Honor.

2     THE COURT:  Mr. Edelstein?

3     MR. EDELSTEIN:  Yes.  On page 36, your Honor.

4     THE COURT:  But we're only going to 35 now.

5     MR. EDELSTEIN:  No, your Honor.

6     THE COURT:  OK.  Pointing 36 to 41, line six.

7     MS. HANFF:  Your Honor, on page 38, line 4, the

8  government would request that instead of such interests in the

9  outcome "creates a motive", that it be replaced with such

10  interest in the outcome "may create a motive".

11     THE COURT:  Mr. Edelstein, on that point?

12     MR. EDELSTEIN:  I would have no objection to that.

13     THE COURT:  OK.  Anything else on this section?

14     MS. HANFF:  No, your Honor.

15     MR. EDELSTEIN:  Yes.  On page 36 at the bottom we as

16  requested in the defense's pretrial requests to charge we would

17  request language from United States v. Glen 312 F.3d 58 stating

18  that if the evidence gives equal or nearly equal circumstantial

19  support to a theory of guilt and a theory of innocence, then

20  guilt is not proven beyond a reasonable doubt.

21     THE COURT:  Ms. Hanff?

22     MS. HANFF:  -- there is a fulsome explanation of

23  reasonable doubt in this charge and that's not necessary and

24  again potentially confusing to a juror.

25     THE COURT:  Let me take a look at the case.

1     MR. EDELSTEIN:  The jump cite is page 70, judge.

2     THE COURT:  Thank you.

3     You said 312 F.3d 58.

4     MR. EDELSTEIN:  And jump cite is page 70 U.S. v. Glen.

5     THE COURT:  And you are asking that this go where,

6   Mr. Edelstein?

7     MR. EDELSTEIN:  The bottom of page 36 in the

8   instruction on direct and circumstantial evidence.

9     THE COURT:  It's got nothing to do with circumstantial

10  evidence.  That's the first point or at least it's not uniquely

11  relevant to circumstantial evidence.  What it really is is an

12  attempt to give content to the reasonable doubt standard.

13  That's what it really is.

14    Now, the real question is whether the charge on

15  reasonable doubt is adequate.  And charge on reasonable doubt

16  requires proof of such a convincing character that a reasonable

17  person would not hesitate to rely and act upon it in the most

18  important of their own affairs and it instructs that if they

19  have a reasonable doubt, they're to acquit.

20    Now that's the standard charge on this subject; isn't

21  it, Mr. Edelstein?

22    MR. EDELSTEIN:  It is the standard charge but I would

23  submit that this specific language from Glen would also, would

24  provide fuller context.

25    THE COURT:  Well, do you have a case that says the

1  failure to give this language is error?

2           MR. EDELSTEIN:  I do not, judge.

3           THE COURT:  Well, I'll tell you why.  We have a whole

4  week to think about it.  You should proceed on the assumption

5  that I'm not going to give it but I'll think about it and if

6  you have any other law to submit that you can get in by next

7  Monday, I'll consider it.

8           MR. EDELSTEIN:  Thank you, your Honor.

9           THE COURT:  OK.  All right.  Anything else on this

10 section?

11          MS. HANFF:  Not on this section, your Honor.

12          THE COURT:  Mr. Edelstein.

13          MR. EDELSTEIN:  No, your Honor.

14          THE COURT:  Where did we leave off?  I think we were

15 at page 41, right?

16          MR. EDELSTEIN:  "38", judge.

17          THE COURT:  I think I had asked you to consider

18 through page 41, line five or six.  Anything else on this

19 section?  No.

20          MR. EDELSTEIN:  No, judge.

21          THE COURT:  Page 41, line seven through page 45,

22 government?

23          MS. HANFF:  No, your Honor.

24          MR. EDELSTEIN:  No, your Honor.

25          THE COURT:  OK.  Page 46 to the end.

1    MS. HANFF:  Nothing specific to that section, your

2    Honor, but there are two additional requests that the

3    government has.  I'm not sure when your Honor wants to take

4    those up.

5         THE COURT:  Take them up now.

6         MS. HANFF:  In the government's proposed request to

7    charge we had a charge that read "request number 34" regarding

8    stipulations because there were quite a number of stipulations

9    in this case.  The government would request that as submitted,

10   the Court give that charge.  And I'm happy to read it aloud.

11        THE COURT:  Well, the reason I didn't do it, of

12   course, is because I instructed them during the course of the

13   trial and I'm trying to hold this charge to a limit that would

14   permit maximum understanding but I understand your point.

15        Mr. Edelstein.

16        MR. EDELSTEIN:  I don't have any objection to that

17   charge being given.  I'll leave it to the Court's discretion.

18        THE COURT:  All right.  We'll give that.

19        MS. HANFF:  And then, your Honor, so in proposed

20   request about particular investigative techniques not required,

21   there's been some suggestion again from defense counsel that

22   perhaps the government should have gotten phone records in a

23   particular case or travel records and so that standard charge

24   we believe is appropriate here.

25        THE COURT:  Mr. Edelstein?

1    MR. EDELSTEIN:  No objection, judge.

2    THE COURT:  All right.  I will in substance give those

3    two charges.

4    MS. HANFF:  Thank you, your Honor.

5    THE COURT:  OK.  Anything else?

6    MR. EDELSTEIN:  Yes.  One further request from the

7    defense which is that the Court charge falsus in uno.

8    MS. HANFF:  We oppose, your Honor.

9    THE COURT:  Because it's not good for your case.

10    Because?

11    MS. HANFF:  Your Honor's language I think makes the

12    most sense.  I think it's what the majority of courts do, which

13    is to say that you can take or leave certain assertions from a

14    witness and I think that's in keeping with common sense as well

15    as with the law.

16    THE COURT:  I'll give my usual falsus in uno

17    instruction.  That takes care of it.

18    MR. EDELSTEIN:  Nothing further from the defense,

19    judge.

20    THE COURT:  OK.  Now you have had the verdict sheet,

21    Court Exhibit J or any objections to it?

22    MS. HANFF:  Your Honor, may I -- your Honor's ruling

23    on falsus in uno is it as it is in the charge?

24    THE COURT:  As it is in the charge?  I thought the

25    whole point was that I was being asked to give something that's

1    not in the charge.

2              MS. HANFF:  Correct, your Honor.  I misunderstood.

3    So, your Honor is adding an additional change.

4              THE COURT:  Yes.  And I've given it probably a hundred

5    times in the last 23 years.  I'm sure you will find it.

6              MS. HANFF:  Understood, your Honor.

7              THE COURT:  OK.  The gist of it is that if you

8    conclude that somebody has deliberately lied to you, you can

9    reject the person's testimony entirely or take from it whatever

10   you think merits credit.  And the mere fact that somebody has

11   lied on one point doesn't mean they've lied on every point.

12   That's the gist.

13             MS. HANFF:  Understood.

14             Thank you, your Honor.

15             THE COURT:  OK.  Verdict form.

16             Government, have any problems?

17             MS. HANFF:  No objections, your Honor.

18             THE COURT:  Defense?

19             MR. EDELSTEIN:  Yes, judge.  We submit there should be

20   language stating that if the jury doesn't convict the defendant

21   of Count One it should not consider Count Three and that if it

22   does not convict the defendant of Count Two, it should not

23   consider Count Four.

24             Those are included in the Court's charge but we

25   believe they should also be in the instructions on the verdict

1    sheet.

2           THE COURT:  What am I missing?  Aren't they in the

3    italics right after Count Two and right after Count Three in

4    addition to being in the charge?

5           MR. EDELSTEIN:  Well, no, judge.  At the top of the

6    page it states "If and only if you unanimously find the

7    defendant guilty of Count Two, murder-for-hire, then answer the

8    question directly below" which is the special verdict regarding

9    resulting in the death of Lowell Fletcher and then stating "If

10   you did not unanimously find the defendant guilty of Count Two,

11   then do not answer the question below and go directly to Count

12   Three".  And then it gives the jury the instruction to consider

13   Count Three without saying that it should only consider that

14   count if it has previously found the defendant guilty of Count

15   One.  And then similarly it allows the jury to go to Count Four

16   after considering Count Three without telling them that they're

17   only to do that if they have previously convicted him of Count

18   Two.

19          THE COURT:  I see your point.

20          MS. HANFF:  Your Honor, we don't have an objection to

21   that.  Again, it's in the charge.

22          THE COURT:  Yes.  So the specific point relates to the

23   instruction that appears right after Count Three should convey

24   that they're to answer Count Three if and only if they've

25   convicted on Count One and then a parallel point with respect

1   to Count Four.

2           MR. TOUGER:  -- go before Count Three, your Honor.

3           THE COURT:  Yes.  OK.  All right.  We'll clean that

4   up.

5           OK.  Anything else?

6           MS. HANFF:  Your Honor, may we have one additional

7   moment?

8           (Pause)

9           MS. HANFF:  Your Honor, that's it.

10          MR. TOUGER:  Your Honor, totally different subject.

11  Mr. Rosemond -- and we had gone over this with Mr. Enzer on

12  Thursday -- I believe his CorrLinks account for some reason

13  there's built in three-day delay.

14          THE COURT:  His what?

15          MR. TOUGER:  The e-mail account that inmates have in

16  jail.  It inmates are able to e-mail other individuals

17  including their lawyer.  At this point there seems to be like a

18  three-day delay in his CorrLinks account.  I talked today

19  Mr. Enzer and he says he has not requested it.  Mr. Rosemond

20  has talked to the head of security over at the MCC.  They said

21  they have no idea why this is happening, that it's not coming

22  from them.

23          I would just ask if Mr. Enzer could contact the MCC

24  and tell them he has no objection to Mr. Rosemond getting his

25  e-mails the same way every other inmate gets them.

1    MS. HANFF:  Your Honor, the government is happy to

2    reach out.  The government has no connection nor knowledge to

3    this delay.

4    THE COURT:  OK.  Current estimates on how long you'll

5    be summing up?

6    MS. HANFF:  On closing, an hour and a half to two

7    hours and on rebuttal, 30 to 45 minutes, your Honor.

8    THE COURT:  Mr. Touger?

9    MR. TOUGER:  I'm hoping for the hour range, your

10   Honor.

11   THE COURT:  OK all right.

12   MS. HANFF:  Your Honor, one additional thing.  As

13   we've done previously, the government intends to submit a

14   letter regarding transcript errors.  We'll circulate it to

15   defense counsel right after this conference and we hope to

16   submit it to your Honor by tonight.  The parties or the

17   government is just interested in making sure we know precisely

18   what transcripts we are working from as we prepare the

19   summations.

20   THE COURT:  Maybe can you stipulate to it and file it

21   electronically because I'm going out of town and I won't see

22   anything until next Monday if it's not on line.

23   MS. HANFF:  Understood, your Honor.

24   MR. TOUGER:  Fine, your Honor.

25   THE COURT:  We're OK.  We are just figuring out the

1   logistics of ECF for the weekend which I think is fine.

2            OK.  I wish everybody a good holiday.

3            Thank you.

4            (Adjourned to Tuesday, November 28, 2017 at 9:30 a.m.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25