UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
───────────────────────────────────────X

UNITED STATES OF AMERICA,

    -against-                                              10 Cr. 431  (LAK)

JAMES J. ROSEMOND,

                        Defendant.
───────────────────────────────────────X

**MOTION FOR A NEW TRIAL PURSUANT TO RULE 33 OF THE FEDERAL RULES OF CRIMINAL PROCEDURE**

                                              James E. Neuman, P.C.
                                              Attorney for Defendant James J. Rosemond
                                              100 Lafayette Street
                                              Suite 501
                                              New York, NY 10013
                                              (212) 966-5612

**PRELIMINARY STATEMENT**

This motion is submitted pursuant to Rule 33 of the Federal Rules of Criminal Procedure, seeking a new trial. Annexed to this motion as exhibits are an Affidavit from the defendant James J. Rosemond (Exhibit A) and an Affidavit from the attorney who represented him at trial, David Touger (Exhibit B). As these affidavits make clear, Mr. Touger adopted a trial strategy over the express opposition of Mr. Rosemond. Specifically, Mr. Touger chose to argue that, although Mr. Rosemond may have directed others to shoot at the victim, he did so without the intent to commit a murder. In contrast, Mr. Rosemond wanted to pursue a defense in which he would deny that he had directed, requested or authorized the alleged shooting. Although this type of strategic choice traditionally has been considered the province of counsel, we submit that *McCoy v Louisiana,* 138 S.Ct. 1500 (2018) – which the Supreme Court decided after Mr. Rosemond's conviction – indicates that defendants have a Sixth Amendment "right of autonomy" entitling them to control the decision whether to contest certain types of allegations and present certain defenses. Violation of that right, the Supreme Court held, constitutes "structural error," not subject to harmless error review. Because Mr. Touger pursued a defense strategy which Mr. Rosemond emphatically opposed – and we submit in contravention of his right of autonomy – there should be a new trial. In any event, this Court may resolve this motion without an evidentiary hearing since there are no factual disputes.

**THE FACTUAL BACKGROUND**

The facts underlying this motion are straightforward. The theory of the prosecution was that Mr. Rosemond paid others to shoot and murder Lowell Fletcher in retaliation for his assaulting Mr. Rosemond's son. During trial, Mr. Touger conceded that Mr. Rosemond had directed the shooting,

-1-

but contested that Mr. Rosemond possessed the requisite intent to kill. As set forth in their affidavits, Mr. Touger pursued this strategy over the express opposition of Mr. Rosemond. Before and during the trial, Mr. Rosemond expressly told Mr. Touger that he wanted to deny that he had ordered the shooting of Lowell Fletcher, rather than merely dispute that he did so with the intent to murder. More specifically, Mr. Rosemond wanted to adopt the same approach as at his prior trial: i.e., assert that he had paid Brian McCleod for the limited purpose of bringing Fletcher to him without any intention of either shooting or assaulting him. Nevertheless, Mr. Touger pursued his strategy on the assumption that, as the trial attorney, such strategic choices were solely within his province. *See,* Touger Affidavit; Rosemond Affidavit.

Thus, during summation Mr. Touger explicitly stated that Mr. Rosemond "paid for a shooting," T1446, and that "the only thing planned here was where the shooting was going to take place **** There was never a plan to shoot Lowell Fletcher to death." T1454. Rather, "the plan was for Lowell Fletcher to survive." T1455. Similar comments were made throughout the summation. For example, Mr. Touger argued that: the amount paid indicated that the services were for a shooting, but not a homicide, T1446, 1460; the planning and manner of the shooting was consistent with other shootings that did not result in homicides, T1451-52, 1479, 1488; and that the choice of weapons indicated that the shooting was not intended to be a homicide, T1456. In one typical comment, Mr. Touger argued that this shooting was "nothing different from many other shootings that they've done without the intent to kill ****" T1479.

Understandably, the government emphasized in rebuttal that defense counsel had made an important concession:

> "There is one thing that is important here. Defense counsel in his closing conceded, he conceded, he said Rosemond did set up the shooting, and he's talking about the shooting of Lowell Fletcher. He expressed that idea through different variations. He said it in different ways." T1495-96.

On November 28, 2017. the jury convicted Mr. Rosemond of all counts. On March 20, 2018, Mr. Touger was replaced by Mr. Rosemond's current counsel. Thereafter, on May 14, 2018, the Supreme Court decided *McCoy v Lousiana, supra,* providing the basis for this motion.

## ANALYSIS

Initially, we submit that this motion may be considered timely. Fed. R. Crim. P. 33(b) provides as follows:

> (1) *Newly discovered evidence.* Any motion for a new trial grounded on newly discovered evidence must be filed within 3 years after the verdict or finding of guilty ****
>
> (2) *Other grounds.* Any motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 14 days after the verdict or finding of guilty.

Nevertheless, such time can be extended pursuant to Rule 45 of the Federal Rules of Criminal Procedure if there was "excusable neglect."

The Second Circuit has set forth four factors to consider in determining whether "excusable neglect" has been demonstrated:

> "(1) the danger of prejudice to the party opposing the extension; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the party seeking the extension; and (4) whether the party seeking the extension acted in good faith." *Anderson v Beland (In re Am. Express Fin. Advisors Secs. Litig.),* 672 F.3d 113, 128 (2nd Cir. 2001).

-3-

Applying this standard, courts have held that "excusable neglect" may be shown where a motion alleges ineffective assistance and trial counsel continued to represent the defendant for months after the 14-day deadline. *See e..g., United States v Kenner,* 272 F.Supp.3d 342, 420 (E.D.N.Y. 2017); *United States v Velazquez*, 197 F.Supp.3d 481, 509 (E.D.N.Y. 2016). In addition, "[t]here is no dispute that a significant intervening change in law constitutes a valid basis to extend the time under Rule 45(b)(1)(B)." *United States v Kirsch,* 151 F.Supp.3d 311, 315 (W.D.N.Y. 2015) (citations omitted).

Here, Mr. Rosemond was represented by trial counsel until March 20, 2018, long after the 14-day deadline passed. Moreover, the basis of this Sixth Amendment claim is a Supreme Court case that was not decided until May 14, 2018. Accordingly, there was good reason why Mr. Rosemond did not assert his claim until now. Further, because this application rests on undisputed facts and should not require any evidentiary hearing (which is due to the nature of the claim, as explained *infra*), it may be resolved expeditiously and without causing any delay in the sentencing proceedings (should the motion be denied).[1] If anything, denying this application as untimely would likely result in a waste of judicial resources by necessitating that the claim be brought later pursuant to 28 U.S.C. § 2255.

For these reasons, and since the government is not prejudiced by permitting this application to proceed, Mr. Rosemond should be permitted to submit this motion at this time. *Compare, United States v Kirsch, supra* (defendant permitted to file motion for a new trial 37 days after an intervening change in law occurred, since there was no allegation of bad faith, no discernible prejudice to the

---

[1] The defense intends to file a sentencing submission and be prepared for sentencing according to the schedule previously set by this Court.

government and no significant delay in the proceedings); *United States v Kenner, supra* (motion permitted over a year after the verdict where trial counsel represented the defendant for months after the verdict, new counsel needed time to become familiar with the record and the delay did not prejudice the government); *United States v Velazquez, supra* (similar).

The merits of this claim depend upon *McCoy v Louisiana, supra,* where the Supreme Court considered the constitutional ramifications of an attorney, over express opposition by his client, conceding guilt at the guilt phase of a death penalty case, ostensibly as strategy for defeating the death penalty at the penalty phase. The Court began by observing that "[t]o gain assistance, a defendant need not surrender control entirely to counsel." 138 S.Ct. at 1508, *supra.* Citing *Gonzalez v United States,* 553 U.S. 242, 248 (2008), the Court recognized that :

> "trial management is the lawyer's province: Counsel provides his or her assistance by making decisions such as 'what arguments to pursue, what evidentiary objections to raise, and what agreements to conclude regarding the admission of evidence." 138 S.Ct. at 1508.

Still, the Court emphasized that some decisions have always remained for the client, including whether to plead guilty, waive a jury, testify on one's own behalf or forgo an appeal. *Id., citing Jones v Barnes,* 463 U.S. 745 (1983).

Most significantly, the Court declared that the latter category also includes"[a]utonomy to decide that the objective of the defense is to assert innocence ****" *Id.* The Court elaborated:

> "Just as a defendant may steadfastly refuse to plead guilty in the face of overwhelming evidence against her, or reject the assistance of legal counsel despite the defendant's own inexperience and lack of professional qualifications, so may she insist on maintaining her innocence at the guilt phase of a capital trial. There are not strategic choices about how best to *achieve* a client's objectives; they are choices about what the client's objectives in fact *are.*" *Id.* (emphasis in original).

Thus, while an attorney may reasonably assess that a concession about guilt is the best strategy to avoid the death penalty, "the client may not share that objective." *Id.* Indeed, the Court recognized that the client:

> "may wish to avoid, above all else, the opprobrium that comes with admitting he killed family members. Or he may hold life in prison not worth living and prefer to risk death for any hope, however small of exoneration." *Id; citing,* Hashimoto, Resurrecting Autonomy: The Criminal Defendant's Right to Control the Case, 90 N.U.L. Rev. 1147, 1178 (2010) (for some defendants "the possibility of an acquittal, even if remote, may be more valuable than the difference between a life and a death sentence").

"When a client expressly asserts that the objective of '*his* defense' is to maintain innocence of the charged criminal acts, his lawyer must abide by that objective and override it by conceding guilt." *Id.* at 1509.

The Court cautioned that, even when honoring the defendant's right to decide whether to maintain innocence, counsel retains the "trial management" role, which involves many choices that do not require client consent, such as "the objections to make, the witnesses to call, and the arguments to advance." *Id.* (quoting *Gonzalez,* 553 U.S. at 248, *supra*). But counsel, in any case, "must still develop a trial strategy and discuss it with her client, explaining why, in her view, conceding guilt would be the best option." *Id.*

Accordingly, because the attorney representing McCoy had conceded guilt of three murders, despite McCoy's express disagreement, the Court concluded that McCoy's Sixth Amendment right of autonomy had been violated, requiring a new trial. *Id.,* at 1509. In reaching that conclusion, the Court distinguished *Florida v Nixon,* 543 U.S. 175, 181 (2004), where the client had remained silent rather than expressly voice disagreement with counsel's trial strategy. For McCoy had opposed his

attorney's concession of guilt both before and during trial, both in conference with his lawyer and in open court. *Id.,* at 1509-10. Finally, the Court noted that, because it was the client's autonomy at issue – rather than counsel's competence – a reversal did not require a showing of prejudice, as in *Strickland v Washington,* 466 U.S. 668 (1984) and its progeny. *Id.* at 510-11. "Violation of a defendant's Sixth Amendment-secured autonomy ranks as error of the kind our decisions have called 'structural'; when present, such an error is not subject to harmless error review." *Id.* at 511.

In this case, we recognize, that the circumstances are different than those presented in *McCoy*. Unlike *McCoy*, this case is not a death penalty case. And unlike in *McCoy,* trial counsel here did not concede guilt altogether. But trial counsel here *did* concede facts over the express opposition of Mr. Rosemond. Moreover, we submit that the nature of the facts conceded are comparable to the type of admission made in *McCoy*. For one thing, the fact conceded here – participating in a shooting conspiracy – is tantamount to an admission of a crime, albeit not the crime charged. Relatedly, the concession could be construed as amounting to an admission of the *actus reus*, though not the *mens rea.*

In addition, as noted in an excerpt quoted above, the Supreme Court recognized that a defendant "may wish to avoid, above all else, the opprobrium that comes with admitting he killed family members." 138 S.Ct. at 108. Similarly, it would be understandable for a defendant, such as Mr. Rosemond, to want to avoid the opprobrium of admitting that he paid another person to commit a shooting (even while denying an intent to kill). Indeed, Mr. Rosemond states in his Affidavit that, "I opposed [Mr. Touger's] approach not just as a matter of trial strategy, but also because I viewed it as a concession that I had committed an immoral and shameful act."

Notably, the question is not whether Mr. Rosemond – or the defendant in *McCoy* - had a rational reason for believing that the concession at trial would actually result in any additional public shame. Nor is the question whether the trial strategy he pursued more likely to result in acquittal, in view of all the circumstances. If those were the questions, then harmless error would apply, which *McCoy* rejected. The question, instead, is simply whether the Sixth Amendment's "right of autonomy" granted Mr. Rosemond final authority to decide whether to concede that he had asked, directed or paid anyone to commit the shooting.

To put the issue more squarely, we posit that *McCoy* may be interpreted as modifying the scope of counsel's "trial management" authority in the following way: counsel may not concede facts which either: (1) amount to an admission of a crime (even if not the crime charged); (2) amount to an admission of the *actus reus*; or (3) amount to an admission of facts that one could perceive as resulting in opprobrium. Interpreting *McCoy* as such, it follows that Mr. Touger's concession – over Mr. Rosemond's express objections - violated his Sixth Amendment right of autonomy, thereby requiring a new trial. *Cf., Belitsky v United States,* 2018 WL 2317796, *7 (M.D. Florida 2018) (counsel retained authority to concede interstate commerce element after *McCoy*); compare, *Krogmann v State,* 2018 WL 3084028 *19-25 (Iowa 2018) (defendant's right of autonomy was impinged by inappropriate asset freeze, which prevented him from expending funds to control his defense).


Dated: August 1, 2018
      New York, NY

Respectfully submitted,

/s/
James E. Neuman, P.C.
Attorneys for Defendant
      James Rosemond
100 Lafayette Street, Suite 501
New York, NY 10013
(212) 966-5612