UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------x
UNITED STATES OF AMERICA,

-against-

S6 10-cr-431 (LAK)

JAMES J. ROSEMOND

               Defendant.
------------------------------------------------x

# MEMORANDUM OPINION

Appearances:

    Samson Enzer
    Drew Skinner
    Elizabeth Hanft
    Assistant United States Attorneys
    GEOFFREY S. BERMAN
    INTERIM UNITED STATES ATTORNEY

    James E. Neuman
    *Attorney for Defendant*

LEWIS A. KAPLAN, *District Judge*.

       This matter is before the Court on defendant James Rosemond's motion for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure [DI 611].

*Background*

       Rosemond was charged in a four-count indictment with (1) participating in a conspiracy to commit murder for hire, in violation of 18 U.S.C. § 1958, (2) committing the murder

for hire of Lowell Fletcher, in violation of 18 U.S.C. § 1958, (3) possession of a firearm in furtherance of the conspiracy to commit murder for hire, in violation of 18 U.S.C. § 924(c)(1)(A)(iii), and (4) causing the death of Lowell Fletcher by using and carrying a firearm in relation to the murder for hire of Fletcher, in violation of 18 U.S.C. § 924(j).[1] The charges arose out of the shooting and killing of Lowell Fletcher. The government sought to prove that Rosemond hired two individuals to murder Fletcher in exchange for $30,000 after Fletcher assaulted Rosemond's teenaged son.

Rosemond was represented at this trial by his retained counsel, David Touger.[2] Touger made – in Rosemond's words – a "strategic choice" during trial to "argue that, although Mr. Rosemond may have directed others to shoot at the victim, he did so without the intent to commit a murder."[3] Rosemond points to several occasions in Touger's summation when he, to that end, "conceded that Mr. Rosemond had directed the shooting."[4] For example, Touger stated that Rosemond "paid for a shooting."[5] He said also that "[t]he only thing planned here was where the

---

[1] DI 237 (Superseding Indictment).

[2] This was Rosemond's third trial on these charges. The first ended in a hung jury. The second, before a different judge, resulted in a conviction, but that judgment was overturned in the Second Circuit on grounds that Rosemond's ability to defend against the charges had been unduly restricted. *See United States v. Rosemond*, 841 F.3d 95 (2d Cir. 2016). In any case, Rosemond is serving a term of life imprisonment by virtue of a conviction in another case.

[3] DI 611 at 1.

[4] *Id.*

[5] Tr. at 1446:22.

shooting was going to take place" and that "[t]here was never a plan to shoot Lowell Fletcher *to death*."[6]

Touger's strategy ultimately was unsuccessful. The jury concluded that the government had proved beyond a reasonable doubt that Rosemond had the requisite intent to kill and convicted him on all counts.[7]

Rosemond now moves for a new trial. He maintains that Touger adopted his strategy of conceding that Rosemond had paid for others to shoot Fletcher "over [his] express opposition."[8] Rosemond maintains that he had wanted to assert that he had paid one of his associates merely to bring Fletcher to him "without any intention of either shooting or assaulting him."[9] He argues that Touger's refusal to adopt Rosemond's preferred strategy in favor of his own constituted a violation of Rosemond's "right of autonomy" and warrants a new trial.

The government argues that the motion should be denied both because it is untimely and because it fails on the merits. Because the Court concludes that the circumstances alleged here, assuming for the sake of discussion the accuracy of the factual assertions made by and on behalf of

---

[6] *Id.* at 1454:19-24 (emphasis added); *see also* DI 611 at 2.

[7] Tr. at 1602:3-24.

[8] DI 611 at 2.

[9] *Id.*; *see also* DI 612 (Affidavit of Rosemond) at 2.

Touger does not dispute the existence of a disagreement. He states that he "discussed [his preferred] strategy with Mr. Rosemond before and during the trial" and that "Mr. Rosemond repeatedly told [him] that he disagreed with the strategy" and "that he wanted to adopt a different strategy of denying that he ever paid anyone to commit the shooting, rather than only dispute the element of intent." DI 613 at 2.


Rosemond, would not warrant a new trial, it need not reach the question of timeliness nor consider whether an evidentiary hearing is required.

*Discussion*

*Rule 33*

Rule 33 states that "upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires."[10] Although a "trial court has broader discretion to grant a new trial under Rule 33 than to grant a motion for acquittal under Rule 29, . . . it nonetheless must exercise the Rule 33 authority sparingly and in the most extraordinary circumstances."[11] The Second Circuit has articulated the standard as follows:

> "The ultimate test on a Rule 33 motion is whether letting a guilty verdict stand would be a manifest injustice. The trial court must be satisfied that competent, satisfactory and sufficient evidence in the record supports the jury verdict. The district court must examine the entire case, take into account all facts and circumstances, and make an objective evaluation. There must be a real concern that an innocent person may have been convicted."[12]

The Court assumes for purposes of this motion, without deciding, that Touger indeed conceded at trial that Rosemond had directed the shooting and that he did so in the face of

---

[10] Fed. R. Crim. P. 33(a).

[11] *United States v. Ghailani*, 761 F. Supp. 2d 167, 195 (S.D.N.Y. 2011) (quoting *United States v. Ferguson*, 246 F.3d 129, 134 (2d Cir. 2001) (quoting *United States v. Sanchez*, 969 F.2d 1409, 1414 (2d Cir. 1992))) (internal quotation marks omitted).

[12] *Ferguson*, 246 F.3d at 134 (internal quotation marks and citations omitted).

Rosemond's expressed and allegedly contrary wishes.[13] Accordingly, the question before the Court is whether his having done so impaired Rosemond's constitutional rights and resulted in a manifest injustice.

McCoy v. Louisiana

Rosemond argues that Touger's concession that Rosemond directed the shooting violated his Sixth Amendment "right of autonomy." He relies on *McCoy v. Lousiana*,[14] in which the Supreme Court considered the case of a defendant who had been convicted on three counts of first-degree murder and sentenced to death. The defense attorney there had concluded that the evidence against the defendant was overwhelming and that the best or only way to avoid a death sentence at the penalty phase of the trial was to concede at the guilt phase of the trial that the defendant was the killer and then urge mercy in view of his "serious mental and emotional issues."[15] The defendant both before and during the trial "vociferously insisted that he did not engage in the charged acts and adamantly objected to any admission of guilt."[16] The state court nonetheless had denied his requests to terminate his counsel's representation and for a new trial, concluding that the

---

[13] Were this a closer case, additional discussion would be warranted as to whether Touger in fact conceded that Rosemond directed the shooting. *See, e.g.,* Tr. at 1457:16-22 ("McCleod is the only one planning anything . . . . Only time Jimmy gets any strategizing was after the shooting actually occurred."). Nonetheless, the Court need not reach this question.

[14] 138 S. Ct. 1500 (2018).

[15] *Id.* at 1506-07.

[16] *Id.* at 1505.

defendant's counsel had had the authority to concede guilt despite the defendant's opposition to the concession.[17] The Supreme Court reversed and held that "a defendant has the right to insist that counsel refrain from admitting guilt, even when counsel's experienced-based view is that confessing guilt offers the defendant the best chance to avoid the death penalty."[18]

The Court reasoned that while "[t]rial management is the lawyer's province," including decisions as to "what arguments to pursue, what evidentiary objections to raise, and what agreements to conclude regarding the admission of evidence,"[19] a criminal defendant is entitled to "[a]utonomy to decide that the objective of the defense is to assert innocence" and to "insist on maintaining her innocence at the guilt phase of a capital trial."[20] As the Court stated, "[t]hese are not strategic choices about how best to *achieve* a client's objectives; they are choices about what the client's objectives in fact *are*."[21]

*Application*

As an initial matter, the government did not seek the death penalty in this case. Nor did Touger concede that Rosemond was guilty of any of the crimes charged. These facts alone set

---

[17] *Id.* at 1506-07.

[18] *Id.* at 1505.

[19] *Id.* at 1508 (quoting *Gonzalez v. United States*, 553 U.S. 242, 248 (2008)) (internal quotation marks omitted).

[20] *Id.*

[21] *Id.*

7

this case far apart from the holding of *McCoy*. While the Court well understands Rosemond's contention that the narrow holding of *McCoy* should be extended beyond capital cases and that this question will be resolved in due course by appellate courts, there is no need to decide it here.[22] Even if the Court were to assume that *McCoy* is not limited to capital cases, Rosemond's motion would fail.

Rosemond provides no compelling basis to conclude that Touger's concession that Rosemond directed the shooting violated his constitutional right to autonomy or resulted in a "manifest injustice." In *McCoy*, the defendant "expressly assert[ed] that the objective of 'his defence' [wa]s to maintain innocence of the charged criminal acts" and his counsel "overr[ode] it by conceding guilt."[23] In this case, Rosemond and Touger both maintained Rosemond's innocence, but disagreed about the best course to attempt to avoid conviction. In other words, their "objectives" were identical – both sought a judgment of acquittal. Moreover, Touger's concession that Rosemond had directed a shooting did not amount to a concession that Rosemond had committed any of the charged crimes or any lesser offense. That Touger's concession may have described a state crime[24]

---

[22] The government asserts that the holding in *McCoy* depends also on the defendant's "insistence" that his counsel maintain his innocence and that Rosemond's motion is precluded on the additional basis that he failed to so insist. DI 616 at 12. Because the Court concludes that the motion fails on alternative grounds, it need not reach the issue of "insistence" in this opinion.

[23] *McCoy*, 138 S. Ct. at 1509 (emphasis omitted).

[24] Rosemond asked the Court at oral argument to extend a defendant's "right of autonomy" to include decisions over whether to concede during a federal criminal case facts sufficient to be found guilty of a crime in state court. The Court takes no position on whether Touger's concession would have amounted to a state crime and, in any event, sees no principled basis for drawing such a line.

does not change the fact that the concession by itself was insufficient to establish Rosemond's guilt as to any one of the four counts in the indictment.

The Court concludes that Touger did not impair Rosemond's "right to autonomy" in conceding that Rosemond directed a shooting and focusing instead on whether the government proved beyond a reasonable doubt that he possessed the requisite intent to *kill*. The Court does not read *McCoy* to suggest that the "objective of the defendant" relates to anything other than the defendant's decision to maintain innocence or concede guilt. And it is well established that the determination of which arguments to advance to achieve acquittal falls squarely within the purview of defense counsel.[25] In Rosemond's own words, Touger's limited concession was a "strategic choice" to avoid conviction.[26]

To hold otherwise could have chaotic and untold consequences. Rosemond asks this Court to broaden *McCoy* and call into question whether the many disagreements that arise between criminal defendants and their trial counsel with respect to counsel's choices about how best to seek acquittal in fact are impairments of the criminal defendants' right to autonomy. Extending *McCoy* in this manner could lead to endless post-conviction litigation concerning what transpired between defendants and their lawyers and how the defendants' unsuccessful defenses were conducted. It would substantially impair the finality of jury verdicts in criminal cases. This is particularly so

---

[25] *Gonzalez*, 553 U.S., at 248; *see also McCoy*, 138 S. Ct. at 1508 (distinguishing between "strategic choices about how best to *achieve* a client's objectives," which fall to counsel, and "choices about what the client's objectives in fact *are*," which fall to the client). *Cf. Strickland v. Washington*, 466 U.S. 668, 690 (1984) ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.").

[26] DI 611 at 2.

because such challenges would not be cabined, as they are when a defendant asserts ineffective assistance of counsel, by any requirement that a defendant prove prejudice in order to obtain relief.[27] This Court is not prepared to read *McCoy* so broadly absent definitive guidance from the higher courts.

*Conclusion*

For the foregoing reasons, Rosemond's motion [DI 611] is denied.

SO ORDERED.

Dated: September 7, 2018

_____
Lewis A. Kaplan
United States District Judge

---

[27] The Supreme Court has held that when a criminal defendant raises a post-conviction claim of ineffective assistance of counsel, the defendant must show not only that "counsel's performance was deficient" and "fell below an objective standard of reasonableness," but also that "the deficient performance prejudiced the defense" such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 687-88, 694.

When a criminal defendant asserts a violation of his or her right to autonomy, however, there is no need to make a showing of prejudice. In *McCoy*, the Supreme Court concluded that "[b]ecause a client's autonomy, not counsel's competence" was at issue, the two-prong ineffective-assistance-of-counsel analysis did not apply. *McCoy*, 138 S. Ct. at 1510-11. Rather, the violation of the defendant's right to autonomy was "complete" when the state court "allowed counsel to usurp control of an issue within McCoy's sole prerogative." *Id.* at 1511. This error was "structural" in kind and, in the face of its "immeasurable" effects, the Court held that a new trial was warranted without a showing of prejudice. *Id.*