1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4                   v.                        10 Cr. 431 (LAK)

5   JAMES J. ROSEMOND,
                                              Sentence
6                   Defendant.

7   ------------------------------x

8                                             New York, N.Y.
                                              November 8, 2018
9                                             4:00 p.m.

10

    Before:
11
                         HON. LEWIS A. KAPLAN,
12
                                              District Judge
13
                              APPEARANCES
14
    GEOFFREY S. BERMAN
15       United States Attorney for the
         Southern District of New York
16  DREW JOHNSON-SKINNER
    SAMSON ENZER
17  ELIZABETH HANFT
         Assistant United States Attorneys
18

19  JAMES E. NEUMAN
         Attorney for Defendant
20

21

22

23

24

25

1          (Case called)

2          MR. JOHNSON-SKINNER:  Good afternoon, your Honor. Drew

3  Skinner, Samson Enzer, and Eizabeth Hanft for the government.

4          MR. NEUMAN:  James Neuman for Mr. Rosemond.

5          THE DEPUTY CLERK:  Please be seated.

6          THE COURT:  I apologize for keeping you late. There we

7  are.  Things happen.

8          Mr. Neuman, have you and your client had the

9  presentence report for the necessary period and both read it?

10          MR. NEUMAN:  Yes, we have, your Honor.

11          THE COURT:  Mr. Rosemond, did you read the presentence

12  report and consult with your lawyer about it?

13          THE DEFENDANT:  Yes, I have.

14          THE COURT:  The presentence report will be sealed and

15  available to counsel in the event of an appeal.  Now I have a

16  letter from the government dated yesterday with some one or

17  more proposed corrections to the PSR.  They result in a modest

18  benefit to the defendant.

19          First of all, is there any objection to modifying the

20  PSR so that it in substance reflects the government's letter?

21          MR. NEUMAN:  No objection.

22          THE COURT:  Any other objections to the presentence

23  report?

24          MR. NEUMAN:  No, your Honor.

25          MR. JOHNSON-SKINNER:  Nothing from the government.

1              THE COURT:  All right.

2         I adopt the presentence report and the guideline

3    computation range it contains.  Save that it is modified in

4    such respects as are necessary to reflect the substance of the

5    government's letter to me dated November 7, 2018, which I think

6    we should docket.  And so then we get to the materials I've had

7    in relation to the sentence, which other than that letter and

8    the presentence report, I think are zero.

9              Is there anything else I should be aware of?

10             MR. JOHNSON-SKINNER:  Judge, there was a submission

11   from the government back when the defendant's sentencing was

12   scheduled in March or April.  It's dated March 6, 2018.  I have

13   a copy if the Court would like.  The Court might have reviewed

14   it.

15             THE COURT:  I certainly read it then, but if you'd

16   like me it read it then I will.

17             Mr. Neuman, is there anything else?

18             MR. NEUMAN:  Yes, your Honor.  I submitted a letter

19   back in August.

20             THE COURT:  Let's see if that's in that stack here.

21             MR. NEUMAN:  And I attached other letters that have

22   been previously submitted.

23             THE COURT:  Do I have that?  Thank you I've been

24   through that.

25             So I have the government's letter dated March 6, which

1    I well remember having reviewed.  Thank you.

2            Mr. Neuman, I'll hear you.

3            MR. NEUMAN:  Judge, I know your discretion is limited

4    to say the least.

5            THE COURT:  To say the least.

6            MR. NEUMAN:  I still feel it's important for me to say

7    some -- make some comments on my client's behalf.  I want to

8    start with recognizing his friends and his family who are here,

9    and we thank them for being here, but I also think it speaks to

10   the kinds of relationships Mr. Rosemond has built over the

11   years.  The letters that were previously submitted in 2015 that

12   I've remitted now are quite eloquent and they give a

13   description of a person who I think should not get life really

14   for -- for any crime.

15           For me, and I'm expressing a political point of view

16   here, your Honor, I guess, but I think life sentences are for

17   those people who are irredeemable, who really have no good

18   qualities to say on their behalf.

19           The letters are replete with glowing comments about

20   the kind of person Mr. Rosemond has been to his friends and

21   family.  They describe someone who is very thoughtful, who is

22   willing to help people by paying them, pay rent for people,

23   paying for clothing for those who need, who does charitable

24   events, raises money for funeral expenses, and they go on and

25   on, your Honor, and I'm not going to dwell on this too much,

1   but the bottom line is the letters depict a person who is a

2   doting father, a loving family member, a very reliable friend

3   who's got a good heart and who cares about his community, and

4   is deeply religious and also has the capability of growth.

5          One letter I think points that out that after the

6   prior time in jail, he went on to become an entrepreneur and

7   made something of himself.  There's letters from inmates who

8   talk about being inspired and pushed to get their GED.  And so,

9   Judge, the bottom line is here, I think Mr. Rosemond has many

10  positive qualities.  And while there's little you can do right

11  now with the current state of law, my position is this is not a

12  person who deserves life imprisonment by any means.  He's got

13  too much going for him.

14         Other than that, I'll just rest on the submission,

15  your Honor.

16         THE COURT:  Thank you.

17         I indicated that I wanted counsel to be in a position

18  to address 5G1.3.  Do you have anything to say on that?  I

19  realize that from a practical point of view -- it has no

20  practical point of view.  It's an academic question.

21         MR. NEUMAN:  Judge, I think this is just a

22  discretionary call for you, because my understanding is that

23  the events here were not -- did not have an effect on the

24  guidelines in the Eastern District case and vice versa.  So I

25  think that leaves us with this being the subdivision, I guess

1    it's (d) in 5G1.3, and it's discretionary.  And my same

2    comments I just made, I would urge you to make it concurrent,

3    using your discretion.

4              THE COURT:  Thank you.

5              Does the government have anything on that point

6              MR. JOHNSON-SKINNER:  Yes, Judge.  We agree as to the

7    guidelines.  We think we're in 5G1.3(d) that it is

8    discretionary with the Court.  And for the same reasons I'm

9    about to address about why the sentence appropriate, we think

10   it should be consecutive to any other sentence the defendant is

11   serving.

12             THE COURT:  Thank you.

13             Mr. Rosemond, you have the right to speak if you wish

14   to do so.  I'd be happy to hear from you.

15             THE DEFENDANT:  Yes, your Honor.  If you don't mind,

16   can I sit down?

17             THE COURT:  Yes.

18             THE DEFENDANT:  Yes.  Thank you.

19             This is America.  I want to apologize to my family and

20   my support system.  Most importantly to my son, when I asked

21   you to intern as a 14 year-old at my office, it was because I

22   wanted you to see your father working and have a strong role

23   model.  I wanted you to look up to brown and black people in

24   board meetings rather than in the streets.  I was proud of the

25   work I was doing.  I never thought when I sent you on that

1    errand you would be surrounded and assaulted by 50 Cent and

2    four G-Unit grown men with guns for wearing a T-shirt.

3          My son, I want you to know today, you did nothing

4    wrong by coming to me and letting me know what happened to you.

5    Any child that's under age should let their parents know if

6    they are assaulted.  Sleep with a sound conscience knowing your

7    father is not a murderer and you are not to blame for my

8    incarceration.  This is bigger than me or you.  I, too, am I

9    casualty.  When a trial isn't about fact-finding to elicit the

10   truth and condemn the guilty, then it's not about justice.  My

11   trial was about grabbing a headline and building a prosecutor's

12   personal career.

13         After three trials for this murder, not one of the

14   government embellishing witnesses said that I told them to

15   murder Lowell Fletcher.  In fact, Brian McLeod, Khalil

16   Abdullah, and Jason Williams respectively stated they never had

17   a conversation about the murder.  But even that consistent

18   testimony would not deter credulous prosecutors from repeatedly

19   trying this case.  Even after being phone tapped by a

20   mendacious witness, Mohammed Stewart for two years, there was

21   no evidence of a plot, conspiracy, or intent or *mens rea* to

22   commit murder-for-hire as charged.

23         I continue to maintain my innocence.  My trial was

24   covered up and drowned out with unrelated shootings, hip-hop

25   gang fairytales, and nonexistent rap wars that never existed.

1  For any black man being painted into that fantasy thug culture

2  is a lethal concoction for a conviction.

3          And the prosecutors knew this.  The prevalence of this

4  injustice has sprung up grassroot organizations to tackle

5  systemic racism in the criminal justice system, which result in

6  mass incarceration and wrongful convictions, disproportionately

7  affecting black and brown people.  I'm not the first nor will I

8  be the last for this to happen to, but this is America.

9          THE COURT:  I'll hear from the government.

10         MR. JOHNSON-SKINNER:  Thank you, Judge.

11         There are three reasons why the mandatory sentence is

12 appropriate in this case.  First is the seriousness of the

13 offense.  Not only did the defendant take a life.  That speaks

14 for itself, but I want to recall the Court's memory to the --

15 all the other incidents we heard about this case that put

16 innocent people's lives in jeopardy.

17         Just one example is the one where the defendant shot

18 at the home of Tony Yayo's sister after waiting for the sister

19 and the child to go in the house, the house that he shot into

20 the kitchen where the sister and the child usually spend their

21 time, and only by luck were upstairs that night.  That's the

22 only reason that we don't have other deaths on our hands in

23 this case.

24         Second is the deterrence that the sentence will

25 provide not just to Mr. Rosemond who is already serving a life

sentence, but to other people.  And that's important for two

reasons in this case.  First, is the comments that we heard the

defendant made about why he wasn't going to be convicted of

this offense and why people were just going to think this was

just another gang banger in the Bronx who died.  That's not how

law enforcement treated this case over the years' of

investigation spent on it, the many trials spent on it.  We

treated this case like we would any other death of a person on

the street, of anywhere.  And we brought the person responsible

for that death to justice.  It's important for him to know that

and for the public to know that.

        Second are the effects that the -- the efforts that he

took to avoid detection in this case.  The burner cell phones,

the encrypted BlackBerries, the sending a murder team there,

the backup team there, throwing away the gun, making sure the

gun with the silencer was in the river.  The defendant and

everyone should know that no matter the sophistication, no

matter the money you have behind you, no matter the efforts you

put into covering up a murder, you're not going to get away

with it.  You're going to be held responsible.

        The third point is that finally now, nine years after

the murder of Lowell Fletcher, Lowell Fletcher's family will

have justice.  They'll know that the person responsible for

killing him was brought to justice.  Mr. Fletcher's sister Leta

Bethel couldn't be here today, but the Court already saw her

1   testify during the trial.  The Court will remember about her

2   crying about getting the worst phone call in her life at her

3   job that her brother had been killed.  She then organized her

4   brother's funeral.

5          That's the same funeral pamphlet the defendant used to

6   toast and celebrate Lowell Fletcher's death.  For Leta Bethel

7   and for the rest of Mr. Fletcher's family, they'll now know

8   that Rosemond has been brought to justice.  They'll know he

9   won't escape responsibility for this, and they can finally have

10  some finality for this horrible crime that's been haunting them

11  all these years.

12         Those are the reasons that the mandatory sentence is

13  appropriate here.  It's also the reasons why it should be

14  consecutive to any other sentence that he's serving, including

15  the sentence in Eastern on the drug case.  It's important for

16  the public and for Mr. Fletcher's family to know -- and to the

17  defendant to know that there is separate punishment for this

18  offense, which is a separate offense with a different purpose.

19  While practically that may not have any effect, it's important

20  to send that message to the defendant and to the public that

21  this murder carries incremental punishment for him.

22         Thank you.

23         THE COURT:  Thank you.  Please rise for the imposition

24  of sentence, Mr. Rosemond.

25         It is the judgment of this Court that you be committed

1   to the custody of the Attorney General of the United States or

2   his designee for a term of imprisonment of life on each of

3   Counts One and Two.  Those terms of imprisonment to run

4   concurrently with each other, plus five years on Count Four,

5   that term to run consecutively to the sentences on Counts One

6   and Two, plus 25 years on Count Three, that term to run

7   consecutively to the sentences on Counts One, Two, and Four,

8   for an aggregate term of imprisonment of life, plus 30 years.

9         The terms of imprisonment imposed hereby all shall run

10   consecutively to the term of imprisonment imposed in case No.

11   11 Cr. 424 in the Eastern District of New York, and any other

12   undischarged sentences to which you are subject.  It is further

13   adjudged that you pay the mandatory special assessment of $400.

14

15         A word about why I elected to make the sentences

16   consecutive, which is the only discretion I had in this case.

17   The rest of the sentence is dictated by statute and I could not

18   have varied from it under any circumstances.  I considered what

19   Mr. Neuman said very carefully and there is a certain amount --

20   more than a certain amount, he's a good lawyer -- of merit to

21   it.  If one hasn't learned it earlier in life, if one has the

22   opportunity to serve in the role that I serve, you learn in a

23   great big hurry that no one is all bad and no one is all good.

24   It's a question of degree.  It's where on the spectrum of good

25   to bad people fall and sometimes they fall in one end at

1    certain parts of their life and at the other end in other parts

2    of their lives.

3            And Mr. Rosemond in many ways, and I'll just mention

4    this one, seems to be a good deal of merit, maybe not

5    100 percent, but a good deal of merit to what's been said you

6    about as a father.  That's something I generally accept.  You

7    you're devoted to your son.  It's obvious and you deserve

8    credit for that.

9            On the other hand, the three points that Mr. Skinner

10   made are all correct.  I know you're serving another life

11   sentence, of course.  And in general, I take a very dim view of

12   what I'll call piling on.  This sentence in some ways but not

13   all, is piling on.  You weren't going to get out anyway.  And I

14   basically don't approve of it in most cases.  But this one is

15   different.  And it's different for the reasons that Mr. Skinner

16   articulated, and although, barring totally unforeseen

17   circumstances, you're never going to get out, regardless of the

18   sentence in this case, there is some value in making clear that

19   there isn't for any reason a free pass on what you did.  In any

20   sense of that term.  And so that's why I elected to do this in

21   this case, despite misgivings about it in some circumstances.

22           I advise you that you have the right to appeal from

23   the judgment imposing this sentence.  If you wish to appeal,

24   you must file a written notice of appeal with the clerk of the

25   district court no later than 14 days after the date on which

1    judgment is entered.  If you wish to appeal and you can't

2    afford to pay the fees necessary to do so, you have the right

3    to apply for permission to appeal as a poor person.  If you

4    can't afford a lawyer, you can ask for a public-appointed

5    lawyer at public expense.  If such applications were granted,

6    you'd be permitted to appeal without payment of any of the

7    fees, legal or court.

8            Anything else, folks?

9            MR. JOHNSON-SKINNER:  Judge, just a few things.

10   First, I assume that the Court has also adopted the guidelines

11   calculation and the criminal history calculation, even though I

12   know it doesn't matter.

13           THE COURT:  I believe I said that, but if I didn't, I

14   certainly do.  You know as modified by your November 7 letter.

15           MR. JOHNSON-SKINNER:  Thank you.

16           The only other point, it's not one I personally come

17   across, but I heard that there may be a legal issue raised in

18   some cases and this is definitely not doing it for purposes of

19   piling on where supervised release is not imposed, even though

20   it doesn't necessarily make a lot of sense.  So to the extent

21   the Court thinks it's appropriate, we would ask that the Court

22   would impose a term of supervised release if the defendant ever

23   were released from prison.  We have no position on the time of

24   supervised release.

25           THE COURT:  I think it's essentially meaningless.  I'm

1    not going to do that.

2         MR. JOHNSON-SKINNER:  I don't think we have anything

3    else.

4         THE COURT:  Mr. Neuman.

5         MR. NEUMAN:  Yes, your Honor.  I understand my client

6    was being housed in Hazelton, a facility in Hazelton before

7    this trial.  Our request is that he be designated or

8    redesignated -- I'm not sure what the procedure is -- to a

9    facility named Coleman, which is in Florida.  And the reason

10   for that is because his youngest child is there with her mother

11   and he wants to be able to stay more in contact with his

12   daughter.

13        MR. JOHNSON-SKINNER:  Could we be heard on that,

14   Judge?

15        THE COURT:  Yes.

16        MR. JOHNSON-SKINNER:  Usually the government doesn't

17   pass on these questions, but the reason we have a concern here

18   is because the defendant has had many issues related to the

19   discipline and having contraband items in prison, including

20   very recently while he's been in custody on this case.  We want

21   the Bureau of Prisons to be able to take all of that

22   information into account and to make the correct decision based

23   on all of the factors that go into the defendant's case.  So

24   it's for that reason that I'd ask -- we just wanted to put that

25   information before the Court, before the Court ruled on that.

1   THE COURT:  The first thing everybody should

2   understand is that even when judges make recommendations like

3   this, the Bureau of Prisons does what it wants to do.  It's not

4   our call.

5       Secondly, it sounds like a perfectly reasonable

6   request, which in other circumstances I would consider

7   favorably.  And I will say to the Bureau of Prisons that I have

8   only two things to say about it here.  If I'm considering all

9   of the facts that they consider, they think Coleman is

10  appropriate, I certainly don't have an objection.

11      The second thing that I would say that I think could

12  conceivably be relevant, not necessarily to Coleman versus

13  another facility, but relevant, is something that I think is

14  understandable but nonetheless struck me forcefully, and it is

15  simply this.  This trial ended a long time ago.  I forget when.

16      MR. JOHNSON-SKINNER:  November 2017.

17      THE COURT:  Mr. Rosemond has every right to say what's

18  on his mind and I don't fault him for doing that.  I simply

19  observe that a year post-verdict, he is an extremely angry

20  individual, and I certainly understand that he's angry and

21  that's simply my firsthand observation.  I understand you're

22  angry, Mr. Rosemond.

23      THE DEFENDANT:  I'm not angry.

24      THE COURT:  I'm sure you are.

25      THE DEFENDANT:  I'm not absolutely not.

1          THE COURT:  It struck me that way anyway.

2          THE DEFENDANT:  I'm not.

3          THE COURT:  But I will temper it by saying you've got

4   a big smile on your face and you're speaking me to me nicely

5   right now.  You've never done otherwise, I understand that, but

6   it is my observation of your remarks a little while ago.

7          I think we're done.

8          Anything else?

9          MR. JOHNSON-SKINNER:  Nothing from the government.

10          THE COURT:  Thank you.

11          MR. JOHNSON-SKINNER:  Sorry, Judge.  Two things.  If

12   there are any open counts, we move to dismiss them.

13          THE COURT:  If there are, I would.

14          MR. JOHNSON-SKINNER:  Secondly, I want to be sure that

15   the defendant is advised of his right to appeal.

16          THE COURT:  I did.

17          MR. JOHNSON-SKINNER:  Thanks.

18          (Adjourned)

19

20

21

22

23

24

25